State, to use of Buchanan County, v. Smith.

THE STATE, TO USE OF BUCHANAN COUNTY, Plaintiff in Error,
v. SMITH *et al.*, Defendants in Error.

1. Where a county collector—who serves two successive terms with two different sets of securities on his official bonds—in making payments during his second term into the county treasury, appropriates and applies such payments, although made out of the revenue of the second term, to the extinguishment of liabilities incurred by him during his first official term, the misappropriation will be binding on the securities in the second bond, if the county treasurer receives the money in good faith.

2. So also where, although the collector makes no appropriation, the treasurer in good faith applies the payments to the extinguishment of the liabilities of the first term.

3. Where the law makes the appropriation in such cases, it will, as between the different sets of securities, appropriate the revenues of each official term to the satisfaction of the liabilities incurred during that term.

4. It will not be presumed, as a matter of law, that all payments made by the collector into the treasury after the second term commences are made on account of the revenue of the second term ; he may make payments before he becomes chargeable with any sums received from the revenue of the second term.

5. Settlements made with the county court by the county collector are only *prima facie* evidence of liability on the part of his securities.

*Error to Buchanan Court of Common Pleas.*

This was an action upon the official bond of Joseph B. Smith, as collector of Buchanan county, Missouri, for the two years commencing September 1st, 1854, and ending September 1, 1856. The bond was dated August 16, 1854, and contains the condition required by statute in such case. The breaches assigned are that said Smith, as collector, collected of the revenue of said county for the two years following the 1st of September, 1854, $9367.08 more than he paid into the treasury of the county or otherwise accounted for ; that during said two years he collected of the revenue of said county the sum of $28,699.69, and that of this sum he had at various times paid into the county treasury or otherwise legally accounted for various sums, amounting in the aggregate to the sum of $19,332.61, and that for the residue—$9,367.08— he has failed to account or pay ; that at a special term of the

county court held in December, 1855, said Smith made with the court a final settlement for all moneys collected by him on account of the revenue for the year ensuing September 1, 1854; that on said settlement there was found a balance due the county, on account of said revenue, amounting to the sum of $3,182.50, which the said Smith failed to pay or account for; that at a special term of the county court held in December, 1856, said Smith made with said court a final settlement for the revenue of said county for the year ensuing the 1st of September, 1855; that on such settlement there was found to be a balance against said Smith — including the balance, $3,182.50, due on the settlement for the preceding year — of $11,424.05; that of this sum he has paid and accounted for the sum of $2,056.97, and has failed to pay or account for the balance—$9,367.08.

Smith, the collector, made no defence. The other defendants answered, admitting the execution of the bond sued on, and alleging that they were only the securities of said Smith thereon. They negatived the first and second breaches; they admitted that Smith made the settlements alleged, but denied that the settlements were conclusive and binding upon them, alleging that they were in fraud of their rights, as securities; that said Smith had been collector for the two years immediately preceding September 1, 1854, with a different set of securities upon his first official bond; that at the close of his first term he was in default in a large amount; that a large amount of money collected from the revenues of the two years of the second term were paid into the treasury and applied fraudulently as against these defendants to the extinguishment of the liabilities of the collector and securities upon the first official bond.

At the trial the plaintiff gave in evidence the settlements made by Smith as collector in December, 1855, and in December, 1856, and rested.

Evidence was then introduced by defendants showing various payments into the county treasury, made by Smith as collector, after September 1st, 1854, and which were not

embraced in the settlements for the years 1854 and 1855. The plaintiff objected to the introduction of this evidence on the ground that there was no evidence tending to prove that they were made out of moneys accruing and collected on the revenue arising after the 1st of September, 1854. The objection was overruled.

The court gave the following instructions at the instance of the defendants : " That the annual settlements made by Smith in December, 1855 and 1856, of the county revenue for 1854 and 1855, are not conclusive upon these defendants, who are his securities, but may be shown to be incorrect, false and fraudulent. 3. That all payments made by Smith into the county treasury after he became chargeable with the revenue of Buchanan county for the year 1854, and received the tax book for that year, and collected licenses for said year, as well as revenue on said tax book, will be presumed, in absence of proof to the contrary, to be made in the extinguishment of the liabilities of said year, to an amount equal to the amount of revenue shown to be collected up to said payments. 5. If the jury believe from the evidence that said Smith collected any sums of money out of and belonging to the county revenue of Buchanan county for the year 1854, and duly paid the same into the county treasury of said county, which said payments so made were omitted by said Smith by accident or mistake or fraud from the settlement of said revenue, made December, 1855, and not embraced or included in any other settlement made by said Smith and in evidence, then they will allow in this action credits for all such payments so made. 6. If the jury believe from the evidence that said Smith had fully accounted for all the revenue of Buchanan county for the two years next ensuing the 1st day of September, 1854, to-wit, for the years 1854 and 1855, they will find for defendants. 8. The jury will allow defendants credits as commissions, on all county revenue of 1854 and 1855 so paid into the treasury, the sum of two per cent. on all moneys arising from licenses, seven per cent. for the first $1000, five per cent. on the next $1000, four per

cent. on the next $1000, and three per cent. on the balance. 10. That plaintiff can not recover in this action for revenue not collected by said Smith of 1854 and 1855 of said county."

The court refused the following instructions asked by plaintiff: " 1. That the settlements read in evidence to the jury are conclusive evidence of the amount that said Joseph B. Smith was indebted to the county of Buchanan on account of the revenue and as collector thereof at the time said settlements were made ; that all the defendants are bound and concluded in this suit by said settlements ; and the jury will find a verdict for the plaintiffs and assess the damages at the balance due on such settlements after deducting therefrom the payments made since the time said settlements were made.    2. If the jury believe from the evidence that the defendant, Joseph B. Smith, as collector of Buchanan county, made a settlement with the county court of Buchanan county for the revenue and on account thereof for the two years next ensuing the 1st of September, 1854, and on such settlement admitted that he was indebted to said county on account of said revenue in the sum of $11,624.05, such admission is evidence against the other defendants and they are bound by it. 3. The jury will exclude from their consideration all evidence tending to prove payments into the treasury on account of the revenue for the two years next ensuing the 1st of September, 1854, and which were made prior to the 7th of January, 1857.    4. The jury will exclude from their consideration the treasurer's receipts read in evidence, dated November 7, 1854, for $1,386.82 : the one dated November 11, 1854, for $936.04 ; the one dated December 1st, 1854, for $971.59, and the one dated December 16, 1854, for $1,500."

The plaintiff then took a nonsuit with leave to move to set the same aside.

*Loan*, for plaintiff in error.

I. The principle settled by the New York and federal courts, and adopted by this court in the case of Draffen v. City of Boonville, 8 Mo. 399, is, that payments into the treasury

of moneys *accruing and received* during an official term are applied to the extinguishment of liabilities of that term. It is a misapplication of the principle to adopt the broad rule that all moneys paid into the treasury, as in this case, by the collector, after the date of the bond sued on, or even after liabilities thereunder are incurred, shall, in the absence of proof, be presumed to be made in discharge of liabilities incurred under said bond. The items of the settlements made in November and December, 1854, were irrelevant and incompetent unless it was also shown that said licenses composed part of the revenue for the time covered by the bond sued on. So of the payments on November 11, 1854, on December 1, 1854, and of the receipt of the treasurer dated November 7, 1854, unless it had been shown that said payments were of moneys derived from the revenue accruing under and secured by the bond sued on, or that such payments were appropriated to the payment of such liabilities. The law in cases like the present applies the payment to the fund from which the money was derived; and the party relying upon the payment must not only prove it, but also the source whence it accrued. Mere proof of payment is insufficient when the pleadings, as in this case, show a liability existing for two successive terms. Nor is the matter cured by the rebutting testimony afterwards introduced by the plaintiff showing, from Smith's settlement with the county court at the December term, 1854, for the revenue of 1852 and '53, that said licenses and payments were of the revenue of those years, and that he had appropriated said payments thereon and received credit therefor on such settlement.

II. The court erred in giving and refusing instructions. The settlements made by Smith with the county were conclusive upon him and his securities. (Jones v. The State, 14 Ark. 170; Grant County v. Bartlett, 5 B. Monr. 195; Price v. Johnson, 15 Mo. 433; Blair v. Perpetual Ins. Co. 10 Mo. 10 Mo. 507.)

*A. H. Vories*, for defendants in error.

I. The settlements made by Smith were not conclusive as against the sureties. (See 11 Mo. 447.) Defendant's instructions are right. (Nolly v. Callaway County Court, 11 Mo. 447; Draffen v. Boonville, 8 Mo. 395; United States v. Eckford Exec'x, 1 How. 263; 7 Cranch, 572.)

Scott, Judge, delivered the opinion of the court.

It does not appear very clearly that the doctrine in relation to the application of payments when two sets of sureties are concerned has any bearing on this case. If the collector, at the time he made the payments gave directions, as to the manner in which they were to be applied, those directions will prevail unless the county treasurer was aware that the moneys received ought not to have been applied as directed. It would not be just that a party should receive money and knowingly apply it to a purpose which would operate as a wrong to others. If a collector of the revenue meets his creditor and with the public money pays him his debt, who is ignorant as to the source whence the money came, the debt is discharged, and the creditor can not be made to refund. But if the creditor, knowing that the money does not belong to his debtor, nevertheless prevails on him to discharge his debt, he is guilty of a fraud and may be compelled to restore the money received to the true owner. So when there is an account against a collector, and he settles it, without any knowledge on the part of the officer receiving the money that it was not applicable to that purpose, the payment will be good, and no one can disturb it. (Inhabitants of Colerain v. Bell, 9 Metc. p. —.) If the collector made an appropriation of the money received, by the treasurer, to the extinguishment of the indebtedness under the first bond, and the money received was due and collected under the last term, yet if the officer who received the payments was ignorant of the fact, and took the money in good faith, the transaction is a valid one; the debt is discharged and the securities for the term during which the money was due and collected are liable for

its misapplication. Although the law, when it falls to its lot to appropriate payments, will not suffer the revenue received under one term to be applied to the satisfaction of a defalcation incurred under another term, when there is a different set of securities for each term; yet if the officer himself will make the misappropriation, and the money is received in good faith by the party to whom the officer is indebted, such misappropriation can not be avoided and it will be binding on the sureties for the term during which it was collected.

Although there may have been no application of the payment when made, yet the law, in making the application between two sets of sureties, will not presume that all the revenue received after the date of the last bond was received in discharge of the liability incurred by reason of such bond, and inflexibly appropriate it accordingly. At the expiration of the first term an officer may be indebted under the bond of that term. The day after, he gives a bond for a second term with different securities. Before he has time to collect any money due for the last term, before he becomes chargeable under it for any sum, he makes a payment into the treasury without directions as to the manner in which it shall be applied. Now it would be unjust to the securities on the first bond to apply this money to the relief of the sureties on the second bond. The circumstances under which a payment is made may show the year for which the money was received with which the payment was made. If, after an officer is properly chargeable with money for a term, he makes a payment, it may be presumed that it was on account of the indebtedness for that term; yet it may be shown to be otherwise, and the circumstances under which it was made may indicate the source whence the money was obtained.

The law is, that if the debtor does not make the application of the payment, the creditor may. If it is shown that the creditor has made application of the payment in good faith towards the extinguishment of the prior indebtedness, the sureties on the last bond will be bound by such application. It is only when the law makes the application of the payments

that the second set of securities is entitled to the sums that may be shown to have been received under their bond, giving them the benefit of the presumption to which reference has been made as to the time of the receipt of the money. (Seymour v. Vayslyck, 8 Wend. 420.)

The facts are not stated with sufficient precision to enable us to determine whether there was a right in the collector to make an application of the payments at the time of the respective settlements under the first bond, in the event it should turn out that no application was made by him or the county at the time the money was paid into the treasury. (U. States v. Kirkpatrick, 9 Wheat. 737.)

The settlements made by a collector are only *prima facie* evidence against his securities. (Nolly v. Callaway County, 11 Mo. 447; U. States v. Eckford's Ex'x, 1 How. 256.) But, although the sureties may show the incorrectness of the settlement, or any errors or omissions in them, or in the previous settlements when their balance has been carried into the subsequent settlements, yet they will not be permitted to disturb the applications of payments made in good faith.

The other judges concurring, the judgment will be reversed and the cause remanded.