[Kumpe v. Bynum, et al.]

# Kumpe, *et al.* *v.* Bynum, *et al.*

*Bill to Restrain Board of Revenue from Appropriating County Funds Towards Erection of High School Building.*

(Decided Dec. 15, 1908. 48 South. 55.)

1. *Counties; Definition.*—A county, as a corporate organization is a governmental agency of the state, and in a sense, a municipal corporation.

2. *Equity; Misappropriation of County Funds; Jurisdiction to Restrain.*—Equity has jurisdiction by injunction at the suit of a taxpayer, to restrain misappropriation of county funds by county officers.

3. *Boards of Revenue and Commissioner's Court; Appropriation; High Schools.*—Boards of revenue or county commissioners are without authority to appropriate the funds of the county towards the erection of a building for the high school created by General Acts, 1907, p. 728; Sections 133-134, 138 and 158, Code 1907, relate only to school houses to be owned by the county, and not to the school houses provided for by General Acts 1907, p. 728.

APPEAL from Lawrence Chancery Court.

Heard before Hon. W. H. SIMPSON.

Bill for injunction by H. D. Bynum and others against J. C. Kumpe and others. The application having been set down for hearing, pursuant to Code 1907, § 4528, and the chancellor having made his fiat for the issuance of the writ, defendants appeal. Affirmed.

CHENAULT & DOWNING, and J. M. IRWIN, for appellant. From the order of the court granting the warrant, the present appellee could have had certiorari to review the court's action.—*Stanfield v. Com. Ct.*, 80 Ala. 290; *Com. Ct. v. Johnson*, 39 South. 910; 4 Ency. P. & P. 90-1, 95-6, 115-16. Having a remedy at law by certiorari the bill will not lie.—22 Cyc. 775; 880-81; 2 High on Injunction, paragraphs 1242 and sec. 11; 1 N. J. E.

283. The court acted in a quasi legislative capacity, and their action is not subject to control.—*Matkin v. Marengo County,* 137 Ala. 163; 7 A. & E. Ency. of Law, 996. It is not shown that the tax payer's burden would be increased.—*R. R. Co. v. Dunn,* 51 Ala. 134. The following additional authorities are cited in support of the action of the court in granting the aid to the school.—*Jeffersonian P. Co. v. Hilliard,* 105 Ala. 576; *Henry v. Cohen,* 66 Ala. 386; Sec. 133, Code 1907; Sec. 138, Code 1907; *Southern Ry. Co. v. St. Clair County,* 124 Ala. 491.

CHARLES M. SHERROD, for appellee. The bill was properly filed.—10 A. & E. Ency. of Law, 782; *Wightman v. Karsner,* 20 Ala. 446; *Allen v. Intendant, etc.,* 89 Ala. 641; 2 High on Injunction, sec. 1237; 2 Dillon Munic. Corp., sec. 914; 1 Pom. Eq. Jur. 258-60; 270-73; *Crampton v. Zabriskie,* 101 U. S. 609; *Gillispie v. Gibbs,* 147 Ala. 449. That the donation was unauthorized, and that the same can be restrained by citizens and taxpayers, the following authorities are cited.—55 Ind. 334; High on Injunctions, sec. 1238; *Harris v. Theus,* 149 Ala. 133; 37 N. J. L. 254; 4 A. & E. Ency. of Law, 392; *R. R. Co v. Dunn, supra; Gillispie v. Gibbs, supra; Allen v. Intendant, supra; Crampton v. Zabriskie, supra; McCord v. Pike,* 2 Am. St. Rep. 85; 5 Am. L. Rep. 220; Sec. 94, art. 4, Const. 1875; *Garland v. Montgomery County.* Maintenance means to keep something up, but does not mean to provide or construct.—14 A. & E. Ency. of Law, 2; 17 Ohio, 340. The support and maintenance of a school is not an essential municipal contract.—*White v. Mayor,* 119 Ala. 476; *Woolf v. Taylor,* 98 Ala. 251. The board was without power to make the appropriation.—*Simpson v. Lauderdale County.* 56 Ala. 64.

DOWDELL, J.—This is a bill by resident taxpayers of the county against the probate judge and the county treasurer, and for the purpose of enjoining the issuance and payment of a warrant on the order of the board of revenue appropriating $2,000 out of the general fund of the county to aid in the construction and building of a "high school building." The application for the writ of injunction was set down for hearing by the chancellor under section 4528 of the Code of 1907, and on such hearing the chancellor made his fiat for the issuance of the writ. From this order the present appeal is taken, under section 4531 of the Code.

The power and jurisdiction of a court of equity on a bill by a taxpayer to enjoin the misappropriation of public funds by public officers is too well settled by the adjudications of this court to now admit of any doubt. This was determined in the case of *Railroad Co. v. Dunn,* 51 Ala. 128, cited by counsel for appellant. The case of *Allen v. Intendant, etc., of LaFayette,* 89 Ala. 641, 8 South. 30, 9 L .R. A. 497, is another, and in which it was said: "The right of the complainants to maintain this suit is, as a general proposition, fully supported by the authorities and not seriously controverted by the appellees." It is true that the cases above cited related to "municipal corporations"; but there can be no distinction in principle between those cases and the case at bar as to the question of jurisdiction of a court of equity. A county, as a corporate organization, is a governmental agency of the state, and in a sense a municipal corporation. In the case of *Simpson v. Lauderdale County,* 56 Ala. 64, in which the question of the power of the commissioners' court of the county to borrow money for the purpose of building a bridge was involved, it was said by this court, speaking through Brickell, C. J.: "We adopt, in reference to counties, what has been

so forcibly said by Justice Bradley in reference to municipal corporations." Then follows a quotation from the opinion of Justice Bradley in the case of *Mayor v. Ray*, 19 Wall. 475, 22 L. Ed. 164, in reference to the powers, etc., of municipal corporations. We cite the above case as showing that principles applicable to municipal corporations in the exercise of corporate powers are alike applicable to counties, and logically the remedies in restraint of the abuse of such powers, in the absence of legislation, is the same; that is, by a bill in equity to enjoin. In High on Injunction (4th Ed.) vol. 2, §§ 1238, 1239, the right of taxpayers to go into a court of equity to enjoin the misappropriation of county funds by county officers is recognized. The case of *Warran County v. Barr*, 55 Ind. 30, is directly in point. We are clearly of the opinion that the chancery court in the present case was not wanting in jurisdiction.

The vital question in the case and on which the equities of the bill depend, is, Did the board of revenue of Lawrence county have the power and authority under the law to appropriate $2,000 out of the general fund of the county "to aid in the construction and building of a high school building" in said county? The board of revenue of Lawrence county has like powers and jurisdiction as courts of county commissioners of the various counties of the state.—Loc. Acts 1898-99, p. 30. The power and control of county boards of revenue over county revenues is derived solely and exclusively from the state, and, where there is no constitutional provision, then only from legislative enactment. It is not pretended here that any authority can be found in our Constitution to sustain the alleged act of the board of revenue in making said appropriation. We are therefore to inquire whether any such statutory authority exists. In the case of *Simpson v. Lauderdale County*,

*supra,* where the power of the court of commissioners to borrow money to pay for the building of a bridge over a stream within the county was involved, it was said: "It would be a departure from the statutes, which clearly define the powers of counties and prescribe their duties and liabilities, to imply a power of borrowing money. No necessity for the implication exists, and the legislative history of the state, which abounds with special enactments conferring the power wherever it has been deemed necessary, forbids it." The power existed under the general statutes to build necessary bridges, but under the above decision carried no implication of the power to borrow money for such purpose.

In support of the power and authority of the board of revenue in the present case to make the alleged appropriation, we are cited by counsel for appellants to the following statutes: Sections 133, 134, 128, and 158 of the Code of 1907; also article 20, c. 41, p. 786, of the same Code, containing sections 1861 to 1868, inclusive. Section 133 is as follows: "The court of county commissioners of each county shall erect courthouses, jails, and hospitals, and the other necessary county buildings; and such court has authority to levy a special tax for that purpose: Provided, that in counties in which a circuit court or court of like jurisdiction has been authorized before the adoption of this Code, to be held in more than one place, the court of county commissioners or board of revenue may build courthouses in each place of holding court, but this section shall not affect in anywise any local law heretofore enacted." It will be observed that this section relates to the duties of the court of county commissioners, requiring the erection of "courthouses, jails, and hospitals, and other *necessary county buildings,*" whatever they may be. (Italics supplied.) Sections 134 and 138 relates to the levy and

collection of special taxes for special purposes therein named. Section 158 is as follows: "The courts of county commissioners and boards of revenue in the several counties may order elections to be held in their respective counties for deciding whether or not the bonds of the county shall be issued for the purpose of constructing, or paying debts created for constructing, public buildings, including school houses and buildings, public roads, bridges, or such other purposes as are authorized by law." This section, it will be observed, provides for the holding of elections for the issuance of bonds for the purposes therein mentioned, namely: "For the purpose of constructing, or paying debts created for constructing public buildings, including schoolhouses and bridges, public roads, or such other purposes as are authorized by law."

We think there can be no question that the "public buildings, including school houses and buildings," referred to in the statute, must necessarily be such as are authorized by law; and, construing the several sections above cited together, we think there can be no doubt that the statutes relate to public buildings, "including school houses and buidlings," which are the property of and belong to the county. These several statutes were enacted long prior to the act approved August 7, 1907 (Gen. Acts 1907, p. 728), and which was adoptedd into the code of 1907 as article 20 of chapter 41. This act provides for the creation of a high school commission and the establishment of high schools upon certain conditions in certain counties of the state—a class of schools theretofore unknown in the free public school law of the state. The act is complete in itself, and the system of high schools provided for is distinct and independent from the free public schools, and such distinction is especially recognized in the act. Section 5

[Kumpe v. Bynum, et al.]

as copied in the Code. Section 3 of the act as adopted into the Code is as follows: "For any county in which the citizens thereof shall secure a suitable site, which shall consist of not less than five acres of land the title to the surface of which shall be in fee (but the land need not include mineral rights), and erect thereon a good and substantial building with all the necessary equipments for a high school, the cost of said land, building and equipments to be not less than five thousand dollars, and upon making a deed to the state of Alabama of said land, building, and equipments, there shall be appropriated out of any money in the treasury not otherwise appropriated the sum of two thousand dollars for the payment of the teachers in said high school or high schools, and this appropriation is hereby made to continue annually, the same to be paid quarterly upon warrants drawn by the county board of education in the county in which said high school is located, said warrant or warrants to be subject to the approval of the commission hereinbefore created; provided furthed, that none of said two thousand dollars shall be devoted to any other purpose whatever than the payment of teachers' salaries."

The statute in terms and expressly provides that when the "citizens" of the county shall furnish the five acres of land and the building and equipment, to cost not less than $5,000, and convey the same by deed to the state, the state will then make an anual appropriation to maintain such high school. Certainly it cannot be said that the county was intended from the terms used—"the citizens of the county." If so, why require the county to convey the property by deed to the state? And if by the language and terms employed the county was not intended, then there is no power, express or implied, in the act whereby the county is authorized to appropriate

out of the general fund of the county money to aid in
the building and construction of such high school build-
ing. Manifestly the statute imposes no duty to furnish
and equip such high school building. It was only in-
tended to provide an opportunity for the citizens of the
county to obtain state aid in the support of such high
school, whenever they (the citizens) complied with the
conditions named in the statute. So, taking the several
statutes above referred to, and relied on by the appel-
lants, separately or collectively, we are unable to find
that any power exists, by express or by necessary im-
plication, to the county to make appropriation out of
its general funds to aid in the construction of such high
school building.

Our conclusion is that no such authority exists, and
the order of the chancellor, appealed from, will be af-
firmed.

Affirmed.

TYSON, C. J., and SIMPSON and DENSON, JJ., concur.